## WILLIAM D. DALY

*v.*

## ADDISON ELY.

*Ex parte* Lehlbach, sheriff of Essex county.

---

## GROBATTO GNECCO

*v.*

## MARY GENTELLE.

*Ex parte* Skinner, special master.

1. The act of April 14th, 1891 (*P. L. of 1891 p. 416*), does not have the effect of repealing the act of March 20th, 1857 (*P. L. of 1857 p. 331; Rev. p. 412*), as amended by act of March 6th, 1863 (*P. L. of 1863 p. 180; Rev. p. 413*), or of altering the rate of charges for publication of legal notices established by that act, unless a special contract be made in that behalf.

Daly *v.* Ely.

2. A special master of this court is not one of the persons designated in the act of April 14th, 1891, and is not thereby authorized to pay the rates of charges for advertisements therein named.

3. *Query*—Is a sheriff authorized by that act to agree to pay those rates on an execution issued out of this court?

4. A sheriff who in good faith makes an advertisement of property under execution, and is prevented from attending the sale thereunder by the payment of the debt before the day of sale, is nevertheless entitled to the fee allowed by the statute for advertising the property for sale.

On motion to fix certain fees.

*Mr. Ely, pro se.*

*Mr. John C. Besson,* for the special master.

*Mr. Cortlandt Parker, contra.*

Pitney, V. C.

The dispute common to both cases is as to the amount of fees for publishing advertisements of sale to be allowed to the newspaper publishing the same. Another dispute, in the one case, is as to the amount of execution fees a sheriff is entitled to charge upon an ordinary *fieri facias de bonis et terris* issued out of this court.

First, with regard to the fees for advertising. The statute of March 20th, 1857 (*P. L. of 1857 p. 381; Rev. p. 412*), entitled "An act to regulate and establish a uniform rate of charge for legal advertising in New Jersey," fixed the lawful charge as follows:

"The price for publishing any legal notice, sheriff's sale or any order, citation, summons or any other proceeding or advertisement required by law to be published in any newspaper, shall be forty cents per folio (one hundred words) for the first insertion and twenty cents per folio for each subsequent insertion after the first."

By a supplement to this act, passed March 6th, 1863 (*P. L. of 1863 p. 180; Rev. p. 413*), this rate was increased to sixty

Daly v. Ely.

cents per folio for the first insertion and thirty cents per folio for each subsequent insertion. And so the law stands at this time.

By the act of April 9th, 1875 (*P. L. of 1875 p. 89; Rev. p. 1049*), one of the two newspapers in which sales of land are advertised is required to be printed and published at the county seat.

By act of April 14th, 1891 (*P. L. of 1891 p. 416*), entitled "An act to regulate the price of legal advertising," it was enacted—

"That it shall be lawful for all officers and boards of any county or municipality of this state to pay for official advertising in the daily newspapers published in cities of the first and second class at the rate of ten cents per line for the first insertion and five cents per line for each subsequent insertion, and no more."

The second section contains a repealer of all previous conflicting acts.

The advertising by the sheriff and special master in these cases was made in newspapers of the character designated by this act of 1891; and the question is whether these newspapers are entitled of right, and in the absence of special contract, to charge the rates named in the act of April 14th, 1891, or are confined to those fixed by the act of March, 1857, as amended by the act of 1863. *Rev. pp. 412, 413.*

It is to be observed that this act of 1891 does not purport to be a supplement to the original act upon this subject above cited, which contains a general, comprehensive and peremptory regulation of the whole field of legal advertising; and yet it is entitled "An act to regulate the price of legal advertising;" and from this title one would expect an equally comprehensive treatment of the subject. But when we come to the actual enactment we find, in the first place, that it deals with a limited class of advertisers, and not with all legal advertisements; and, in the second place, it deals only with a limited class of newspapers, viz., daily newspapers published in cities of the first and second class, leaving the wider field of publication quite untouched.

It seems to me that such an act can in no sense be termed "An act to regulate the price of legal advertising."

In the next place, it is to be observed that it does not fix the rate which the newspaper is entitled to charge in the sense in which that is done by the general act above cited, but fixes a limit beyond which the particular officer or board procuring the advertisement may not go in making payment. It does not say that such public officer or board *shall pay* so much and no more, or that such newspaper *shall be entitled to charge* so much and no more, but simply that it *shall be lawful to pay* so much and no more. The natural force of this language is to confine and limit the power to contract of the persons named, and not to fix the amount which the newspaper may charge in the absence of contract. I am unable to construe it as interfering with or repealing the act of 1863 except to the extent just stated. The original act, in my judgment, stands as *prima facie* measure of price and payment in the absence of contract.

But the further point was taken that neither the sheriff nor the special master are within the class to whom the power of increased payment is given, and that if the sheriff be properly classed as an officer of the county, still, in procuring this advertisement, he was not acting as such, but was acting as the special officer of the court of chancery, and that the true construction of the act of 1891 is that the advertisement for which the officer is authorized to pay the price therein named must be an advertisement by or on behalf of the county or municipality of which he is an officer, and does not apply to an advertisement made by the sheriff when acting as the officer of the court of chancery.

I am inclined to think that this point is well taken. The court of chancery is not obliged by law to send its process to any particular officer. It may send it to one of its own officers, as a special master, or to a person specially appointed, and when a process is sent to a sheriff he does not execute it by virtue of his office as sheriff of the county, but as an officer of the court of chancery. The advertisement is not made by or on behalf of the county or any municipality. The result of adopting this view would be that advertisements of sale ordered by the court

18

of chancery, or of land taken by process issued out of the court of chancery, are not such advertisements as are referred to and covered by the act of 1891.

The point just dealt with is undoubtedly good so far as relates to the special master. He is not an officer of any county or municipality of this state.

But whether I am right or not with regard to the view above suggested as to the relation of the sheriff to this court, the result is the same for another reason.

There is in this case no proof of any express contract between either of the parties and the proprietor of the newspaper. In the case of the special master he had no right or power to make any such contract, and his limit in that respect was presumably known to the proprietor of the newspaper who published his advertisement. If, therefore, the proprietor expected to charge at a higher rate than that fixed by the act of 1863, he should have so stated to the master before inserting the advertisement, and have stipulated for such payment. In the absence of such stipulation he must be presumed to have been satisfied with compensation at the rate fixed in the act of 1863 and can be allowed and paid no more by the master.

I am of the opinion that the same consideration applies to the case of the sheriff. There is no proof before me that anything was said between the sheriff and the proprietor of the newspaper in Essex county as to the price which should be charged in this case, and in the absence of such stipulation, the presumption is that the rate fixed by the act of 1863 applies, and the charge for advertising in the sheriff's case must be reduced accordingly.

The other question raised is as to certain execution fees charged by the sheriff, viz., advertising the property for sale, $3.50. This item is based upon the provision of the statute regulating fees (*Rev. p. 405*), as follows: "Advertising the property for sale, providing the sheriff or deputy sheriff attend in pursuance of the advertisement, $3.50."

The property in this case was duly and fully advertised for sale; but as soon as the defendant heard of the advertisement he appeared at the sheriff's office and paid the execution, thereby

·stopping the sale ; and he now contends that although the sheriff has done all the work required by the statute to be done in the way of advertising in order to earn the fee of $3.50, he is yet not entitled to receive it unless, in point of fact, he does actually ·attend in person or by deputy in pursuance of the advertisement.

I do not think that construction is the proper and fair one. The proviso was intended to prevent the sheriff from charging the fee where he advertises and then of his own accord volun-·tarily abandons the sale and pays no attention to it. It ought not to be construed as giving the defendant the power to permit the sheriff to incur the labor and trouble of advertising, and ·then come in and pay the debt and thereby prevent the sheriff from receiving the fee given by the statute. Such construction ·ought not to be adopted unless it is unavoidable.

I think the sheriff is entitled to that fee.

The result is that the charge for advertisement in each case must be cut down to sixty cents per folio for the first insertion ·and thirty cents per folio for each subsequent insertion.